UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | |
| LEONARDO ANDUJAR SANCHEZ, | * | Criminal Action No. 25-cr-10234-ADB |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Defendant Leonardo Andujar Sanchez ("Andujar Sanchez") is charged with possession of more than 400 grams of fentanyl with the intent to distribute, in violation of 21 U.S.C § 841, and possession of a firearm as an alien unlawfully present in the United States, in violation of 18 U.S.C. § 922. [ECF No. 58]. Before the Court is Andujar Sanchez's motion to suppress certain evidence seized by law enforcement officers during the warrantless search of a hotel room in which he was staying in 2024. [ECF No. 47]. Specifically, Andujar Sanchez seeks suppression of (1) a black AR-style assault rifle taken from a pink suitcase, and (2) a substance found in a blue bag which officers believed to be fentanyl. [ECF No. 48 at 7–9 ("Mot.")]. For the following reasons, the motion is **DENIED**. Because the Court denies Andujar Sanchez's motion to suppress, the government's motion to strike Andujar Sanchez's affidavit in support of his motion, [ECF No. 89], is **DENIED AS MOOT**.

## I. BACKGROUND

Except as otherwise noted, the following facts are drawn from the reports of law enforcement officers in this case and are uncontested for purposes of this motion.

On the morning of December 27, 2024, police officers in Revere, Massachusetts responded to a 911 call from a woman who "reported that her boyfriend had a firearm and controlled substances in their hotel room" at the Quality Inn Hotel in Revere. [ECF No. 1-2 ¶ 8]; [ECF No. 52-1 ¶ 6]. On the 911 call, the woman told officers that the firearm was black, long, and hidden under a pink suitcase in their hotel room. [Mot. at 2]; [ECF No. 52-1 ¶ 6]. The same woman had also made calls to 911 in the days before and had told officers that her boyfriend, later identified to be Andujar Sanchez, had a "kilo" of drugs in the room. [Mot. at 2].

When officers arrived at the Quality Inn following the December 27 911 call, the woman repeated that the gun was in a pink suitcase and said that the drugs were located inside a blue bag. [ECF No. 1-2 ¶ 9]. She further informed the officers that she and Andujar Sanchez had been staying at the Quality Inn for three months, and that they had "obtained the room through a refugee program." [Id. ¶ 9]. Both the woman's and Andujar Sanchez's names were on the hotel room reservation. [ECF No. 52-1 ¶ 8]. The woman told officers that she had free access to all spaces inside the room, [id. ¶ 10], but she did not specifically claim that the pink suitcase or blue bag belonged to her, and there is no evidence that any of the officers present asked her about the ownership, use, or control of the suitcase or bag, see [ECF No. 1-2 ¶¶ 8–9]; [ECF No. 52-1 ¶¶ 10–13]. At the officers' request, the woman gave them oral permission to enter and search the room, [ECF No. 1-2 ¶ 9].

When officers entered the room, they found Andujar Sanchez asleep on the bed, woke him, and placed him in handcuffs before beginning their search. [ECF No. 1-2 ¶ 10]. Thereafter, officers found a closed, pink, hard-shelled suitcase, opened it, unzipped the interior compartment, and found that it contained a "black assault style rifle with a collapsible butt stalk," as well as magazines for the firearm. [ECF No. 52-1 ¶ 15]. Officers then identified a

blue bag "located in the same position in the room as explained by the [woman]," opened it, and found that it contained "a large amount of powdered substance that was packaged in such a way that [they] immediately suspected it was narcotics," as well as "three 'brick' looking packages that . . . appeared to be narcotics." [Id. ¶ 17].

According to an affidavit submitted by Andujar Sanchez, both the pink suitcase and blue bag belonged solely to him and did not contain any belongings of the woman, whom he describes as his girlfriend at the time. [ECF No. 68 ¶ 3]. Andujar Sanchez further attests that he "did not give [his] girlfriend at the time the authority to access or to consent to searches of any of [his] belongings," [id.], and that the officers who entered the room and handcuffed him never asked "whether the pink suitcase was [his], was [his] then-girlfriend's, or was a shared suitcase before opening it." [Id. ¶ 8].

After discovering what appeared to be narcotics, the officers stopped their search and obtained a state search warrant for the entirety of the room. [ECF No. 52-1 ¶¶ 18–19]; [ECF No. 52-2]. A subsequent search of the hotel room pursuant to the warrant revealed "approximately five kilograms of suspected fentanyl . . . four digital scales, an abundance of blue latex gloves, two rifle magazines, and several rounds of .380 ammunition." [ECF No. 1-2 ¶ 12].

## II. DISCUSSION

The Fourth Amendment protects against "unreasonable searches and seizures," U.S. Const. amend. IV, and evidence obtained in violation of the Fourth Amendment can generally not be used against a criminal defendant at trial, United States v. Harrington, 56 F.4th 195, 200 (1st Cir. 2022) (citing Weeks v. United States, 232 U.S. 383 (1914); Mapp v. Ohio, 367 U.S. 643 (1961); United States v. Camacho, 661 F.3d 718, 724 (1st Cir. 2011)). In general, "searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge,

are per se unreasonable," although there are several exceptions to this warrant requirement. Thompson v. Wilson, 159 F.4th 91, 96 (1st Cir. 2025) (quoting City of Los Angeles v. Patel, 576 U.S. 409, 419 (2015)).

The parties are in agreement that the initial search of the pink suitcase and blue bag located in Andujar Sanchez's hotel room occurred without a warrant. Andujar Sanchez argues that, as a result, the evidence recovered from the initial search of these containers must be suppressed. [Mot. at 3–9]. In response, the government argues that (1) Andujar Sanchez lacks standing to challenge the search of these containers; (2) the search was proper because Andujar Sanchez's girlfriend consented to it; and (3) in any event, suppression of the evidence is inappropriate under the inevitable discovery doctrine. [ECF No. 52 at 3–10]. A hearing was held on October 5, 2026.

The Court has considered the parties' respective arguments, including those raised at the October 5, 2026, motion hearing. For purposes of this motion, the Court assumes, without deciding, that Andujar Sanchez has standing.[1] He attempted to establish standing through a late-filed affidavit but was available for cross examination at the hearing. The validity of the consent search is an interesting issue and a close call. The woman gave consent to search every "space," had access to the entire small hotel room, and knew the location of the gun and drugs, which suggests that she had access to the bags where they were found. That said, the officers did not clearly establish her use or control of the bags prior to the search. Ultimately, the Court declines

[1] "[B]ecause Fourth Amendment 'standing' is not jurisdictional," the Court can presume Andujar Sanchez has standing for the purposes of evaluating the merits of his motion to suppress. United States v. Vick, 145 F.4th 191, 199 n.2 (1st Cir. 2025).

to rule on these issues because it finds the inevitable discovery doctrine precludes suppression regardless of the standing and consent questions.

Under the inevitable discovery doctrine, even "evidence found unlawfully is not excluded if it would have inevitably been discovered anyhow through lawful means." United States v. Fagan, 71 F.4th 12, 23 (1st Cir. 2023) (citing United States v. Almeida, 434 F.3d 25, 28 (1st Cir. 2006)). To determine whether the inevitable discovery doctrine applies in a given case, courts in this Circuit ask:

> [F]irst, whether the legal means by which the evidence would have been discovered was truly independent; second, whether the use of the legal means would have inevitably led to the discovery of the evidence; and third, whether applying the inevitable discovery rule would either provide an incentive for police misconduct or significantly weaken constitutional protections.

Id. (quoting Almeida, 434 F.3d at 28). The government bears the burden of establishing inevitable discovery "by a preponderance of the evidence." United States v. Soto-Peguero, 978 F.3d 13, 20 (1st Cir. 2020) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)).

Here, the Court finds by a preponderance of the evidence that the firearm and drugs in Andujar Sanchez's hotel room would inevitably have been discovered through legal means had police not conducted the search at issue. At the time the officers decided to conduct the warrantless search of the hotel room, they had a firsthand report from a percipient witness that there was a "kilo" of illegal drugs in the room, [Mot. at 2], along with a long gun that Andujar Sanchez did not have a license to carry, [ECF No. 52-1 ¶¶ 6, 9]. Had officers not chosen to search the hotel room immediately, the obvious and inevitable alternative course of action would have been to apply for a warrant to search the pink suitcase and blue bag. Indeed, officers did, in fact, apply for and obtain a warrant shortly after the initial search, relying to a substantial extent on evidence that predated or was otherwise independent of the search. Because the information

available to officers at the time already plainly satisfied the probable cause standard, the Court has no doubt that such a warrant would have issued. See United States v. Austin, 991 F.3d 51, 56 (1st Cir. 2021) (noting that the "uncorroborated testimony" of a "percipient witness to [the defendant's] possession of contraband at the [searched] residence" suffices to establish probable cause, absent circumstances raising doubt about veracity).

The First Circuit has repeatedly found the inevitable discovery doctrine applicable under similar circumstances. In United States v. Hughes, 640 F.3d 428 (1st Cir. 2011), the First Circuit applied the doctrine where a confession by the defendant independently "gave the troopers probable cause to obtain a warrant" for the searched area, and a "warrant issued the next day" after the initial warrantless search. Id. at 440. Likewise, in United States v. Jadlowe, 628 F.3d 1 (1st Cir. 2010), the First Circuit applied the doctrine where "the circumstances as a whole left 'no doubt' that the officers would have sought a warrant [absent the unlawful search]—as they eventually did." Id. at 10–11; see also United States v. Procopio, 88 F.3d 21, 27 (1st Cir. 1996) (applying inevitable discovery doctrine where there was "little reason to doubt that the local police would have contacted federal agents" based on evidence independent of initial warrantless search, and federal agents "would have then sought a warrant to search the briefcase.").

Moreover, the Court does not find this to be a situation where "applying the inevitable discovery rule would either provide an incentive for police misconduct or significantly weaken constitutional protections." Fagan, 71 F.4th at 23 (quoting Almeida, 434 F.3d at 28). "In undertaking that inquiry," courts "look toward whether the record establishes that law enforcement officers intentionally violated the Fourth Amendment as well as the incentives, if any, for them to act unconstitutionally." Soto-Peguero, 978 F.3d at 21. Although Andujar Sanchez argues that the warrantless search in this case should not have occurred, the Court sees

"no basis for finding on this record the kind of egregious or flagrant official misconduct" that precludes application of the inevitable discovery doctrine, and it finds that the application of the inevitable discovery doctrine in this circumstance would not create an incentive for officers to act unconstitutionally. Id. at 22. Even assuming that the girlfriend lacked authority to consent to the search of the bags at issue, what occurred is more akin to a good faith error where the Officers apparently believed that the girlfriend's access to the hotel room and its contents, coupled with her knowledge of the specific location of the guns and drugs, was sufficient to establish authority to consent to a search that encompassed the bags.

Accordingly, although the Court does not reach the issue, even assuming that the search of the pink and blue bags may have exceeded the permissible scope of the consent clearly given, the evidence found in the bags would have been inevitably discovered, and the motion to suppress is therefore denied.

## III. CONCLUSION

For the foregoing reasons, Andujar Sanchez's motion to suppress, [ECF No. 47], is **DENIED**, and the government's motion to strike Andujar Sanchez's affidavit in support of his motion to suppress, [ECF No. 89], is **DENIED AS MOOT**.

**SO ORDERED.**

October 8, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE